# ELEAZER WINAKUR

*vs.*

## LOUIS A. HAZARD.

### *Attachment—Non-Residence.*

One who, having been given by his employer a six months' vacation for the benefit of his health, went to Florida and California, *held* not to be, during such period, a non-resident of the State for the purpose of the attachment law, since he might be expected to return before the half-year period had fully expired.

*Decided January 11th, 1922.*

Appeal from the Superior Court of Baltimore City (GORTER, J.).

Action by Eleazer Winakur against Louis A. Hazard. From an order quashing an attachment caused to be issued by the plaintiff, he appeals. Affirmed.

The cause was argued before BOYD, C. J., BRISCOE, THOMAS, PATTISON, URNER, STOCKBRIDGE, ADKINS, and OFFUTT, JJ.

*Jacob J. H. Mitnick* and *Hiram J. Weiskopf,* for the appellant.

The defendant (appellee) was a non-resident for the purpose of an attachment, under the decisions of this Court in *Risewick* v. *Davis,* 19 Md. 82; *Dorsey* v. *Kyle,* 30 Md. 512; *Dorsey* v. *Dorsey,* 30 Md. 522, and *Hollander* v. *Central Metal Co.,* 109 Md. 131, and the cases of *Matter of Thompson,* 1 Wendell, 43; *Frost* v. *Brisbin,* 19 Wendell, 14, and *Haggart* v. *Morgan,* 5 N. Y. (1 Selden) 428, cited, relied

on, and approved, in the above cases of *Risewick* v. *Davis, Dorsey* v. *Kyle* and *Hollander* v. *Central Metal Co.,* the weight of the evidence being that the appellee left the State for an indefinite period.

Leaving the State for any considerable length of time, or a protracted absence, preventing the ordinary service of summons, is equivalent to non-residence for the purpose of the attachment law. In re *Thompson,* 1 Wendell 43; *Frost* v. *Brisbin,* 19 Wendell, 14; *Haggart* v. *Morgan,* 5 N. Y. 423; *Mayor* v. *Genet,* 4 Hun, 487; *Stout* v. *Leonard,* 37 N. J. L. 492; *Baldwin* v. *Flagg,* 43 N. J. L. 495; *Nailor* v. *French,* 4 Yeates (Pa.) 241; *Witbeck* v. *Marshall-Wells Hardware Co.,* 88 Ill. App. 101.

*Richard M. Duvall,* with whom were *Duvall & Baldwin* on the brief, for the appellee.

STOCKBRIDGE, J., delivered the opinion of the Court.

The appeal in this case is from an order of JUDGE GORTER sitting as of the Superior Court of Baltimore City, by which an attachment that had been previously sued out by the present appellant was quashed. The facts in the case are practically undisputed, and are comparatively simple.

Louis A. Hazard, the appellee, was president of the Triangle Oil Corporation and as such president signed a note as president on the 12th of November, 1920, for $2,500, and also indorsed the note, which was drawn to the order of the Triangle Oil Corporation, both as president and as an individual. The note by its terms was to fall due on March first, 1921, and it was discounted by the appellant, Eleazer Winakur. Not being paid at maturity, Mr. Winakur endeavored to get in touch with Mr. Hazard, and was advised that he was absent from Baltimore, and the precise date of his return was unknown. Mr. Hazard was an elderly gentleman, not enjoying the best of health, and the concern of Wise Brothers, with which he was also connected, gave him a six months' vacation for the benefit of his health, acting on

which, Mr. Hazard went to Florida and thence on to Southern California. It was while thus absent that Mr. Winakur endeavored to get in touch with Mr. Hazard and, failing in so doing, he sued out a non-resident attachment and levied the same upon the residence of Mr. Hazard on North Broadway. Upon Mr. Hazard's return to Baltimore a motion to quash the attachment was made, upon the ground that Mr. Hazard was a resident of Baltimore, and the appeal in this case was from the order of court granting that motion and quashing the attachment.

When we come to examine the law properly applicable to a case like that presented by the record, it is not as clear as is to be desired. The adjudications upon the situation at first sight appear somewhat inharmonious. This results from a variety of reasons. In some of the cases the terms "resident" and "citizen" are used in a manner to indicate that the court was employing these two terms synonymously, though, as a matter of fact, there is a distinction between them. There is a class of cases where the matter presented to the court was as to the right of an individual to register or exercise the right of suffrage in a particular locality, and in cases of this description the two terms are used interchangeably more often than in any other class. Some of the decisions attempt to draw a distinction between resident in reference to political rights from those which have to do with commercial rights, but in all of these cases the lines of decision are somewhat hazy and difficult to follow unless, after careful examination, the facts out of which the case therein presented to the court are fully understood. In general it may be said that there is no class of cases in which each case rests upon its own peculiar facts to a greater extent than where it is a question of residence or non-residence, or, it may be, of domicile. In some of the cases the language of the opinions is very broad and susceptible of an extension not called for by the facts of the case and which, carried to its logical result, would lead to an absurdity. The appellant, taking his cue from the language used in such opinions as

*Risewick* v. *Davis,* 19 Md. 82, and *Dorsey* v. *Kyle,* 30 Md. 512, urges that, at the time of the issuance of the writ in this case, Mr. Hazard was a non-resident and as such liable to be proceeded against under the non-resident attachment law of this State. The authority for these cases is found in several New York cases in which, under the peculiar circumstances of each case, the phraseology of the decisions does not seem to have been weighed with the consideration which it should have had. As contrasting the general terms which are to be found in many of the decisions, compare the expression in *Dorsey* v. *Kyle, supra,* that "a person who does not reside in this State" is a non-resident, with the language in the case of *Langheimer* v. *Munter,* 80 Md. 525, where it is said that "temporary absence with a continuous intention to return will not deprive one of his residence though it extends through a series of years," and which language is used by our Court upon the authority of *Cooley on Constitutional Limitations,* 600, and *Fry's* case, 71 Pa. St. 302, and again quoted with approval in *Turner* v. *Crosby,* 85 Md. 181, and all of which cases were again reviewed in a very thorough opinion in the case of *Hollander* v. *Central Metal Company,* 109 Md. 131.

Now what were the facts in the two most recent Maryland cases? In *Dorsey* v. *Kyle,* 30 Md. 512, the individual sought to be proceeded against had left Maryland in July, 1861, and gone to Virginia. He remained there until the close of the Civil War and even after that, and, in view of his long absence from the State with no expressed idea of returning here at any certain time, he was held to be liable to be proceeded against as a non-resident. In the case of *Hollander* v. *Central Metal Company, supra,* the suit was one to enforce the specific performance of a covenant relating to the redemption of a ground rent. Mr. Hollander went to Scandinavia for the purpose of pursuing certain philological researches and, upon his return to the United States, stopped in New York for the purpose of pursuing the same studies still further. He also sought to have the proceeding against

him quashed upon the ground of his residence here, but this Court held that, not having stated in his pleadings any time when he expected to return here, or even that he did expect to return here, that the proceeding against him as a non-resident was maintainable. Thus all of these cases present a condition far different from that shown in the case of Mr. Hazard. He had been given a vacation of six months and that only. Under the very terms of this concession to him, he might be expected to return to Baltimore before the half year period had fully expired.

The view now contended for by the appellant carried to its inevitable logical conclusion would render it unsafe for a member of the bar of Baltimore City to come to Annapolis to argue a case in this Court, because he could not in advance say with absolute certainty what train he might return by, and when he would reach Baltimore, so as to be amenable to the process of the courts of that city. Any such construction of the law would be so unreasonable as to demonstrate at once the fallacy of the appellant's contention. The order appealed from will therefore be affirmed.

*Order affirmed, with costs in this Court and the court below.*